**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
RICHARD RAYMEN, et al.,                 )
                                        )
            Plaintiffs,                 )
                                        )
      v.                                )      Civil Action No. 05-486 (RBW)
                                        )
UNITED SENIOR ASSOCIATION, INC.,        )
et al.,                                 )
                                        )
            Defendants.                 )
_____)

## MEMORANDUM OPINION

On March 9, 2005, the plaintiffs filed this action seeking to prevent the defendants from

further using their images in an advertising campaign which challenged various public policy

positions taken by the American Association of Retired Persons ("AARP") regarding Social

Security reform and the military.  Complaint ("Compl.") ¶ 1.  Currently before the Court are the

defendants' motions to dismiss, and the plaintiffs' opposition thereto.[1]  For the reasons set forth

below, the Court grants the defendants' motions, dissolves the stipulated order for a preliminary

injunction, and dismisses this case.

### I.   Factual and Procedural Background

On March 3, 2004, the plaintiffs were among 300 citizens of Multnomah County, Oregon

---

[1]  The following papers have been submitted to the Court in connection with these motions:
(1) Memorandum of Points and Authorities in Support of Motion of Defendant Mark Montini to Dismiss the
Complaint ("Montini Mem."); (2) Defendant United Seniors Association, Inc.'s Memorandum in Support of Its
Motion to Dismiss ("USA Next's Mem."); (3) Plaintiffs' Memorandum in Opposition to Defendants' Motion to
Dismiss ("Pls.' Opp'n"); (4) Reply Memorandum in Further Support of Motion of Defendant Mark Montini to
Dismiss the Complaint ("Montini Reply"); and (5) Defendant United Senior Associations, Inc.'s Reply
Memorandum in Support of its Motion to Dismiss ("USA Next's Reply").

who were married pursuant to a newly established right to same-sex marriage in that county.

Compl. ¶ 9.  While at City Hall awaiting their opportunity to marry, the plaintiffs, Steve Hansen

and Richard Raymen, kissed.  A photographer from a Portland, Oregon newspaper, the Tribune,

captured the kiss in a photograph he took.  Id.  The photograph was subsequently published in

both the Tribune newspaper on March 4, 2004, and later on the Tribune's website.  Id.  At some

later point in time, the Tribune's website photograph was used without permission[2] as part of an

advertisement created by defendant Mark Montini.  Id. ¶ 10.  The advertising campaign was

created for a nonprofit organization, United Senior Association, Inc., which does business under

the name USA Next.  Id. ¶¶ 7, 10.  The advertisement, which features the photograph of the

plaintiffs kissing, was part of a campaign by USA Next challenging various public policy

positions purportedly taken by the AARP.  Id. ¶ 14.  Specifically, the advertisement contains two

pictures.  The first is a picture of an American soldier, who presumably is in Iraq, with a red "X"

superimposed over it, and the second is the photograph of the plaintiffs with a green checkmark

superimposed over it.  The caption under the advertisement reads:  "The Real AARP Agenda,"

id. ¶ 13, suggesting that the AARP opposes the United States military efforts abroad and supports

the gay lifestyle.  This advertisement ran on the website of The American Spectator magazine

from February 15, 2005, to February 21, 2005.  Id. ¶ 10.

　　　According to the plaintiffs, the purpose of the advertising campaign was "to incite viewer

passions against the AARP because of its alleged support of equal marriage rights for same-sex

couples and its alleged lack of support of American troops."  Id. ¶ 14.  Moreover, the plaintiffs

---

[2]  The plaintiffs allege that defendant Montini later attempted to purchase the picture from the Tribune, but that his attempt to do so was unsuccessful. Compl. ¶ 23.

opine that the "advertisement also conveys the message that the plaintiffs . . . are against

American troops . . . and are unpatriotic." Id. ¶ 15.  The plaintiffs contend that the advertisement

attracted media attention, which then caused an even wider distribution of the advertisement

throughout the media.  Id. ¶ 16.  The plaintiffs assert that because of the advertisement, they

"have suffered embarrassment, extreme emotional distress, and the invasion of their privacy."

Id. ¶ 20.  In addition, the plaintiffs represent that as a result of the false and misleading inference

"communicated by the [a]dvertisement about [the] plaintiffs, their reputations as patriotic

American citizens has been severely damaged."  Id.

Seeking to prevent further use of their images in the advertisement, on March 9, 2005, the

plaintiffs filed this action alleging four common-law causes of action—libel; invasion of privacy

by portraying their images in a false light; invasion of privacy by appropriating their likeness; and

intentional infliction of emotional distress.  Id. ¶¶ 27-62.  The complaint also seeks permanent

injunctive relief and monetary damages.  Id. at 13-14.  On that same day, the plaintiffs filed a

motion for a temporary restraining order and a motion for a preliminary injunction.  The Court

immediately heard arguments on the plaintiffs' motion for a temporary restraining order on

March 9 and March 10, 2005.  In light of the expedited hearing, neither defendant had the

opportunity to submit substantive legal memoranda in opposition to the plaintiffs' motion and

defendant Montini was not present at the argument.  At the conclusion of the hearing on March

10, 2005, this Court orally granted the plaintiffs' motion from the bench and later issued a

memorandum opinion consistent with that ruling on March 16, 2005.  Following the Court's

ruling, the parties entered into a stipulated preliminary injunction, alleviating the need for this

Court to rule on the plaintiffs' motion for a preliminary injunction.  The defendants now seek

dismissal of this action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim

upon which relief can be granted.[3]

## II.   Standard of Review

On a motion to dismiss for failure to state a claim upon which relief can be granted

pursuant to Rule 12(b)(6), this Court must construe the allegations and facts in the complaint in

the light most favorable to the plaintiff and must grant the plaintiff the benefit of all inferences

that can be derived from the alleged facts.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Barr v.

Clinton, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (citing Kowal v. MCI Commc'ns Corp., 16 F.3d

1271, 1276 (D.C. Cir. 1994)).   "[T]he complaint need only set forth 'a short and plain statement

of the claim,' Fed. R. Civ. P. 8(a)(2), giving the defendant fair notice of the claim and the

grounds upon which it rests." Kingman Park Civic Ass'n v. Williams, 348 F.3d 1033, 1040 (D.C.

Cir. 2003) (citing Conley, 355 U.S. at 47).  "Such simplified 'notice pleading' is made possible

by the liberal opportunity for discovery and the other pretrial procedures established by the Rules

to disclose more precisely the basis of both claim and defense and to define more narrowly the

disputed facts and issues." Conley, 355 U.S. at 47-48.  While many well-plead complaints are

conclusory, the Court need not accept inferences or conclusory allegations that are unsupported

by the facts set forth in the complaint.  Kowal, 16 F.3d at 1276.  Moreover, in deciding whether

to dismiss a claim under Rule 12(b)(6), the Court can only consider the facts alleged in the

complaint, documents attached as exhibits or incorporated by reference into the complaint, and

---

[3] Montini also seeks dismissal of this action under Rule 12(b)(2) for lack of personal jurisdiction. However, based upon the record currently before the Court, it is unclear whether this motion has merit.  Thus, further discovery would be required to resolve this motion.  Nonetheless, for the reasons stated herein, Montini is entitled to dismissal of this action under Rule 12(b)(6).

matters about which the Court may take judicial notice.  <u>EEOC v. St. Francis Xavier Parochial</u>

<u>Sch.</u>, 117 F.3d 621, 624-25 n.3 (D.C. Cir. 1997).  A court may dismiss a claim pursuant to Rule

12(b)(6) only if the defendant can demonstrate "beyond doubt that the plaintiff can prove no set

of facts in support of his claim which would entitle him to relief."  <u>Conley</u>, 355 U.S. at 45-46

(footnote omitted).

### III.   Legal Analysis

The defendants challenge each claim in the plaintiffs' complaint.  The Court will address

each challenge separately.[4]

### A.   The Plaintiffs' Libel Claim

The plaintiffs contend that the advertisement in which their image appears projects the

view that the AARP supports a gay lifestyle and does not support the United States military

efforts abroad.  Compl. ¶ 14.  And by using their images in the advertisement, the plaintiffs opine

that a reasonable person would attribute the views purportedly held by the AARP about the

military to the plaintiffs.  <u>Id.</u> ¶ 15.  Thus, the plaintiffs assert that the defendants have portrayed

them as unpatriotic Americans who do not support the United States military.  <u>Id.</u> ¶ 28.

Moreover, the plaintiffs assert that due to the manner in which they have been portrayed in the

advertisement, they have been subjected to "hatred, contempt and ridicule, and [that the

defendant's conduct has] diminished the esteem, respect, goodwill and confidence in which the

---

[4] In this Court's prior opinion, it determined that the law of Oregon controls the disposition of the claims
because Oregon, not the District of Columbia, has the dominant interest in this case.  <u>Raymen v. United Senior</u>
<u>Ass'n</u>, No. 05-486, at 3-4 (March 16, 2005).  Neither party challenges that decision here, Montini Mem. at 17-38
(applying Oregon law); USA Next's Mem. at 3 n.3; Pls.' Opp'n at 5-30 (applying Oregon law), and this Court sees
no reason to alter its prior holding at this time.

plaintiffs are held." Id. ¶ 30.  Accordingly, the plaintiffs contend that they have been defamed

and thus have established a claim for libel.  Pls.' Opp'n at 5.  The defendants' argue, however,

that the plaintiffs have failed to state a claim for libel.  Specifically, they contend that the

advertisement is not capable of a defamatory meaning, either directly or by inference, and that no

reasonable person could interpret the advertisement as suggesting that the plaintiffs are

unpatriotic Americans.  USA Next's Mem. at 11-13; Montini Mem. at 18-23.[5]

Under Oregon law, libel can be established by demonstrating that a communication is

capable of a defamatory meaning.  Beecher v. Montgomery Ward & Co., Inc., 517 P.2d 667, 669

(Or. 1973).  In determining whether a communication is defamatory, the Oregon Supreme Court

applies the test set forth in the Restatement of Torts.  Id.; King v. Menolascino, 555 P.2d 442,

443 (Or. 1976); see Bellairs v. Beaverton School Dist., No. Civ. 04-770, 2004 WL 1900417, at

*2 (D. Or. Aug. 23, 2004); Restatement (Second) Torts § 559 (1976).  Under the Restatement,

"'[a] communication is defamatory if it tends so to harm the reputation of another as to lower

him in the estimation of the communication or to deter third persons from associating or dealing

with him.'"  King, 555 P.2d at 443 (quoting Restatement (First) Torts § 559 (1938)).

Accordingly, "[t]o establish actionable defamation, [the] plaintiffs must prove that [the]

defendant made a defamatory statement that was false and that was communicated to a third

party."  Brown v. Gatti, 99 P.3d 299, 305 (Or. Ct. App. 2004) (citing Reesman v. Highfill, 965

P.2d 1030 (Or. 1998); Wallulis v. Dymowski, 918 P.2d 755 (Or. 1996); Fowler v. Donnelly, 358

P.2d 485 (Or. 1960)).  "[A] statement can be [either] facially defamatory or 'defamatory by

---

[5] Defendant Montini also suggests that dismissal is appropriate because the plaintiffs are unable to show that the advertisement actually defamed them.  Montini Mem. at 23-24.  Because as indicated below this Court concludes that the advertisement is not capable of a defamatory meaning, it need not address this alternative position.

implication,' that is, a statement from which a reasonable person could draw a defamatory

inference." Brown, 99 P.3d at 305. "Whether a particular statement is capable of a defamatory

meaning is a legal question for the court rather than a fact question for the jury." Id. at 306; see

Bellairs, 2004 WL 1900417, at *2. In a case of defamation by implication, the Court must

"examine[] the connection between the statement and the defamatory inference to determine

whether 'the inference that the plaintiff seeks to draw from the facially nondefamaotry

communication is reasonable." Brown, 99 P.3d at 305. If the Court determines that the

statement is capable of a defamatory meaning, dispositive motions must be denied, and a jury

must decide whether a defamatory meaning was understood by the recipients. Beecher, 517 P.2d

at 669.

After now having had the opportunity to throughly scrutinize the advertisement in

question, this Court simply cannot conclude that it is capable of a defamatory meaning. As

already discussed, the advertisement contains two pictures. The first is a picture of an American

soldier, who is presumably serving overseas, with a red "X" superimposed over it, and the second

is the photograph of the plaintiffs with a green checkmark superimposed over it. The caption

under the advertisement reads: "The Real AARP Agenda." Compl. ¶ 13. First, there is nothing

on the face of this advertisement that is defamatory to the plaintiffs. Rather, it is apparent from

the advertisement as a whole that the only message the advertisement sends is that the AARP

allegedly supports gay marriage and does not support the United States military. Facially,

nothing in the advertisement suggests, as the plaintiffs posit, that they are "unpatriotic American

citizens who do not support the United States military while our nation is at war." Id. ¶ 9.

Moreover, a reasonable person could not infer a defamatory connotation from viewing the

advertisement.  This Court simply cannot make the leap suggested by the plaintiffs that simply

because their image was used in one portion of the advertisement that the advertisement implies

that they themselves subscribe to the AARP's policy positions on the military, which is

represented in a separate portion of the advertisement.  In addition, the advertisement does not

lead to the inference that all individuals who are either gay or support same-sex marriage are

anti-military and unpatriotic.  The link the plaintiffs are trying to make is simply too tenuous.

See, e.g., Reesman, 965 P.2d at 1035 (concluding that a statement that a corkscrew climb "is

definitely frowned upon by FAA authorities" does not reasonably imply that the maneuver was

improper and thereby does not imply a pilot was unsafe); Anderson v. Guard Publ'g Co., 489

P.2d 944 (Or. 1971) (concluding that newspaper story stating that the plaintiff and her husband

were getting a divorce and that her husband shot a man sitting in the car with the plaintiff was not

defamatory because any inference that the plaintiff was conducting herself improperly with the

man would be too tenuous to form a basis for liability).  In fact, the advertisement conveys no

message of positions either supported or not supported by the plaintiffs.  Rather the only

connotations that can be derived from the advertisement in regard to the plaintiffs is that they are

a gay couple and support gay marriage, which are true representations, Compl. ¶ 6, and therefore

cannot form the basis of a defamation claim.  Volm v. Legacy Health Sys., Inc., 237 F. Supp. 2d

1166, 1178 (D. Or. 2002) ("Truth is a complete defense to defamation.") (citing Bahr v.

Statesman Journal, 624 P.2d 664 (Or. Ct. App. 1981)).  As such, the advertisement is not capable

of a defamatory meaning either directly or by inference.  Thus, the plaintiffs' first claim must be

dismissed for failure to state a claim upon which relief can be granted.

**B.**      **The Plaintiffs' Invasion of Privacy, Appropriation of Likeness Claim**

"'One who appropriates to his own use or benefit the name or likeness of another is

subject to liability to the other for invasion of his privacy.'" Martinez v. Democrat-Herald

Publ'g Co., Inc., 669 P.2d 818, 829 (Or. Ct. App. 1983) (quoting Restatement (Second) of Torts

§ 652C (1976)).  Under § 652C of the Restatement, plaintiffs can recover "damages when their

names, pictures or other likenesses have been used without their consent to advertise a

defendant's product, to accompany an article sold, to add luster to the name of a corporation or

for some other business purpose." Id.  However, there is no actionable appropriation of a

person's likeness claim "when a person's picture is used to illustrate a noncommercial,

newsworthy article." Id.  This proscription is demanded by the First Amendment, which courts

have concluded "permits the use of a plaintiff's name or likeness when that use is made in the

context of, and reasonably relates to, a publication concerning a matter that is newsworthy or of

legitimate public concern." Joe Dickerson & Assocs., LLC v. Dittmar, 34 P.3d 995, 1003 (Colo.

2001); see also Lane v. Random House, Inc., 985 F. Supp. 141, 146 (D.D.C. 1995); Eastwood v.

Superior Court, 198 Cal. Rptr. 342 (Cal. Ct. App. 1983); Haskell v. Stauffer Commc'ns, Inc.,

990 P.2d 163, 166 (Kan Ct. App. 1999).  Determining whether a communication warrants First

Amendment protection under the newsworthy or legitimate public concern exception requires the

Court first to examine whether the communication is primarily commercial or noncommerical in

nature. Joe Dickerson, 34 P.3d at 1003 (citing Tellado v. Time-Life Books, Inc., 643 F, Supp.

904, 909-10 (D.N.J. 1986)).  A communication can be both commercial and noncommercial, and

simply because a publication has commercial value does not mean that the privilege does not

apply.  Rather, a publication may still be protected even if it has "commercial undertones . . . if it

concerns a legitimate matter of public concern." Joe Dickerson, 34 P.3d at 1003 (citing Ault v.

Hustler Mag. Inc., 860 F.2d 877, 883 (9th Cir. 1988)).  Whether a communication is commercial

or noncommercial is a question of law.  Lee v. Penthouse Int'l Ltd., No. CV 96-7069, 1997 U.S.

Dist. LEXIS 23893, at *11 n.2 (C.D. Cal. March 20, 1997); Haskell, 990 P.2d at 166-67; Tellado,

643 F. Supp. at 910.

As noted, this Court must first determine whether the advertisement is commercial or

noncommercial in nature and whether it merits application of the privilege discussed above.  See

New York Mag. v. Metro. Transp. Auth., 987 F. Supp. 254, 262 (S.D.N.Y. 1997), rev'd in part

on other grounds, 136 F.3d 123 (2d Cir. 1998).  The defendants contend that the plaintiffs' claim

fails because the advertisement is a noncommercial message that addresses issues of public

concern.  Montini Mem. at 26-30; USA Next's Mem. at 27-30.  Accordingly, the defendants

posit that the communication is entitled to First Amendment protection and thus the

appropriation of likeness claim cannot be sustained as a matter of law.  Montini Mem. at 26-30;

USA Next's Mem. at 27-30.[6]   The plaintiffs argue, however, that the advertisement is not

newsworthy and does not address issues of public concern, but rather is commercial in nature

since it solicits donations and seeks to increase USA Next's membership.  Pls.' Opp'n at 12.

The photograph of the plaintiffs was used as part of USA Next's advertising campaign,

which sought, at least in part, to engender opposition to AARP's policy position on social

security reform.  Presumably, the advertisement sought to vilify the AARP by conveying a

message concerning AARP's alleged views on two hot button policy issues — support of same-

---

[6]  The defendants put forth a number of additional arguments to support dismissal of this claim.  This Court need not address these alternative positions because it concludes that the advertisement is protected speech.

sex marriage and opposition to the military.  While the advertisement itself lacked any substantive discussion of these issues, it did convey AARP's purported position on both subjects. And someone who viewed the advertisement online could then access the USA Next's webpages which described the organization and its position on Social Security reform.  Compl. ¶ 17. Clearly the issues of same-sex marriage and support for the military are issues of public concern and both have been widely discussed in the media.  See, e.g., Associated Press, National Briefing South: Tennessee: Same-Sex Marraige Amendment to Be on Ballot, N.Y. Times, March 28, 2005, at A18; Bill Graves, Election 2004 Ballot Measures Same-Sex Marriage Oregon Group Already Mobilized When County Began Issuing Licenses, The Oregonian, Oct. 8, 2004, at A6; Gwyneth Shaw, Tens of Thousands Protest Iraq War Demonstration is Largest of its Kind in Washington Since Invasion, Baltimore Sun, Sept. 25, 2005, at 1A; Hundreds Join Anti-War Vigil, New Jersey Record, Aug. 14, 2005, at A13.  In fact, the plaintiffs contend in their complaint that the purpose of the advertisement was to influence Congress.  Compl. ¶ 1.

The plaintiffs' argument that the advertisement is commercial in nature because it sought contributions and promoted USA Next's lobbying services, Pls.' Opp 13-14, is unpersuasive. First, nothing in the advertisement itself seeks donations.  Rather, only after using the advertisement (by clicking on it) to access the webpages were viewers exposed to the information about USA Next and the solicitation for financial contributions.[7]  Compl. ¶ 17.  This Court cannot conclude that this detached solicitation elevates the advertisement itself to a level where it

___

[7] The advertisement advised viewers to click on it — stating "Click Here for Details" — for additional information.  Upon clicking on the advertisement, the viewer is taken to webpages that discuss USA Next's positions on social security reform, not same-sex marriage or the military.  Compl. ¶ 17.  While the webpages also allegedly contain a solicitation for financial contributions, this is simply not sufficient to find that the advertisement is commercial in nature.

can be deemed commercial in nature. See, e.g., Martinez, 669 P.2d at 820 ("The fact that the defendant is engaged in the business of publication, for example of a newspaper, out of which he makes or seeks to make a profit, is not enough to make the incidental publication of a commercial use of the name or likeness.") (quoting Restatement (Second) Torts § 652C, cmt. d (1976)).  Moreover, contrary to the plaintiffs' assertion, this case is not analogous to either Beverly v. Choices Women's Med. Ctr. Inc., 587 N.E.2d 275 (N.Y. 1991) or Caraway v. L.S. Agency, No. 85 Civ. 1855, 1986 WL 12529 (S.D.N.Y. Oct. 27, 1986).

In Beverly, the Court concluded that a calendar produced by a for-profit hospital was commercial in nature because it had the hospital's "name, logo, address, and telephone number on each page of the calendar," along with "glowing characterizations and endorsements concerning the services" provided by the hospital, and thus left no doubt that the calendar was created to preserve existing patronage and to solicit new patients. Id. at 278.  Here, the advertisement does not even associate itself with USA Next through the use of its address, telephone number, logo, or in any other manner.  Moreover, the calendar in Beverly promoted the use of the hospital's services, while the advertisement here discusses public policy issues that are currently the subject of public debate.[8]  And Caraway simply adhered to the proposition that the newsworthy exception can only be invoked if a defendant used the photograph of a plaintiff in a manner that was related to a newsworthy article or a discussion of public concern.  Caraway,

---

[8] To the extent that Oregon courts would conclude that a communication involving issues of public concern do not qualify for First Amendment protection if a defendant received an "extraordinary commercial benefit," Martinez, 669 P.2d at 189, this Court cannot conclude that a solicitation for donations or for membership only after a viewer has clicked on the advertisement rises to the level of an "extraordinary commercial benefit."

1986 WL 12529, at *3-4.[9]  In this case, the photograph of the plaintiffs is clearly related to

matters of public concern.  First, the advertisement itself, through the use of visual images,

challenges the AARP's policy positions.  And second, if viewers click on the advertisement, they

are directed to a web-page which provides further discussion of these issues.  Compl. ¶ 17.  Thus,

Caraway actually supports the defendants' position because the photograph was used in a manner

that is directly related to issues of public concern.

     In sum, the Court concludes that the advertisement addresses issues of public concern and

is not commercial in nature.  This case is analogous to Martinez, 669 P.2d at 818, where the

Oregon Court of Appeals concluded that a newspapers use of a student's photograph in an article

discussing drug use in the local junior high school could not form the basis for an appropriation

of likeness claim because the article discussed a timely subject to the community and was not

intended to have an extraordinary commercial benefit to the publishers.  Id. at 820-21.

Accordingly, the First Amendment precludes the plaintiffs from maintaining their appropriation

of likeness claim.  Therefore, this claim must be dismissed for failure to state a claim upon which

relief can be granted.

**C.**    **The Plaintiffs' Invasion of Privacy, False Light Claim**

     While the Supreme Court of Oregon has yet to formally recognize a claim for invasion of

privacy by false light, Reesman, 607 P.2d at 1036, it has nonetheless described the tort of

---

    [9] In Caraway, the plaintiff authorized the United States Navy to use his photograph for promotional
purposes in his hometown.  Caraway, 1986 WL 12529, at *1.  The defendant, a magazine publisher, obtained the
photograph and used it to illustrate the cover of his magazine.  Id. at *1-2.  The plaintiff filed an invasion of privacy
action under a New York Civil Rights Law, and the defendants filed a motion to dismiss contending that use of the
photograph was protected by the newsworthy exception.  Id. at *2.  The Court denied the defendant's motion, noting
that a photograph is only protected by the newsworthy exception if it is related to a newsworthy article.  Id. at *3.
Thus, the Court concluded that the newsworthy exception did not apply because despite having the plaintiff's
photograph on the cover of the magazine, no article in the magazine had any relationship to the picture.  Id. at *4.

invasion of privacy by false light as being similar to the

> tort of defamation, in that it leads others to believe something about a person that
> is not true.  However, the primary injury in a defamation claim is damage to a
> person's reputation, while the primary injury in a false-light claim is the mental
> distress or anguish a person suffers because the "false light" that is cast by a
> communication is highly offensive.

Id.  However, the Oregon Court of Appeals, the State's intermediate appellate court, has

recognized such a claim as prescribed by the Restatement (Second) of Torts.  Dean v. Guard

Publishing Co., 699 P.2d 1158, 1160 (Or. Ct. App. 1985).  Under the Restatement

> One who gives publicity to a matter concerning another that places the other before the
> public in a false light is subject to liability to the other for invasion of his privacy, if
>     (a) the false light in which the other was placed would be highly offensive to a
>     reasonable person, and
>     (b) the actor has knowledge of or acted in reckless disregard as to the falsity of the
>     publized matter and the false light in which the other would be placed.

Restatement (Second) Torts § 652E (1977).  A plaintiff need not be defamed to bring a false light

claim, rather, "[i]t is enough that he is given unreasonable and highly objectionable publicity that

attributes to him characteristics, conduct or beliefs that are false, and so is placed before the

public in a false position."  Id., § 652E, cmt. b.

Similar to the their libel claim, the plaintiffs' false light claim is predicated upon the

subject of the advertisement and the plaintiffs' position that it directly and by implication

portrays them as "unpatriotic American citizens who do not support the Untied States military."

Compl. ¶ 48.  However, as already discussed, there are no reasonable links between the

advertisement and the direct or implied views the plaintiffs assert the advertisement makes about

them.  Thus, just as the plaintiffs have failed to state a libel claim, their false light claim is also

deficient.  Reesman, 965 P.2d at 1036-37 (rejection false light claim on the same basis for

rejection defamation claim).

**D.      The Plaintiffs' Intentional Infliction of Emotional Distress Claim.**

A claim for intentional infliction of emotional distress under Oregon law contains three

elements: "'(1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the

defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the

defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable

conduct.'" McGanty v. Staudenraus, 901 P.2d 841, 849 (Or. 1995) (quoting Sheets v. Knight,

779 P.2d 1000 (Or. 1989)); Checkley v. Boyd, 14 P.3d 81, 85-86 (Or. Ct. App. 2000) (citing

McGanty, 901 P.2d at 849).  The intent element is satisfied "'where the actor desires to inflict

severe emotional distress, and also where he knows that such distress is certain, or substantially

certain, to result from his conduct.'"  McGanty, 901 P.2d at 853 (quoting Restatement (Second)

of Torts § 46, cmt. I (1965)).  As to the third element, the plaintiff must establish that the

"defendants' conduct constituted an extraordinary transgression of the bounds of socially

tolerable conduct."  Id. (citing McGanty, 901 P.2d at 848, 852-53).   "Initially, 'it is a question of

law whether, viewing the evidence in the light most favorable to plaintiff, defendants' conduct

constitutes extraordinary conduct which a reasonable jury could find beyond the farthest reaches

of socially tolerable behavior.'"  Kraemer v. Harding, 976 P.2d 1160, 1173 (Or. Ct. App. 1999)

(quoting Tenold v. Weyerhaeuser Co., 873 P.2d 413 (Or. Ct. App. 1994)).   Oregon courts have

conclude that "rude, boorish, tyrannical, [and] churlish" conduct does not satisfy this standard,

nor do "insults, harsh or intimidating words, or rude behavior ordinarily."  Id. (citations omitted).

To establish an actionable claim, the plaintiffs must also demonstrate that they have suffered

severe emotional distress as a result of defendants' conduct.  Rockhill v. Pollard, 485 P.2d 28

(Or. 1971).

The plaintiffs claim that their intentional infliction of emotional distress claim is predicated upon the development, promotion and dissemination of the advertisement, which the plaintiffs assert caused them severe emotional distress and was "outrageous conduct that grossly exceeded the bounds of socially tolerable behavior." Compl. ¶¶ 59-60. The defendants argue that this claim cannot survive for a variety of reasons. USA Next's Mem. at 15; Monini's Mem. at 35-38. This Court does not need to discuss each of the defendants' positions because it is clear that the conduct alleged by the plaintiffs is not outrageous, and thus the plaintiffs' intentional infliction of emotion distress claim cannot survive the defendants' motions.

The determination of whether a defendant's conduct amounts to an extraordinary transgression of the bounds of socially tolerable conduct "is a fact specific inquiry, to be considered on a case-by-case basis, considering the totality of the circumstances." Hetfield v. Bostwick, 901 P.2d 986, 988 (Or. Ct. App. 1995) (citing Lathrope-Olson v. Dept of Transportatino, 876 P.2d 345 (Or. Ct. App. 1994)). The plaintiffs rely heavily on Checkley v. Boyd, 14 P.3d 81, 86 (Or. Ct. App. 2000) for their position that the defendants' conduct is extreme and outrageous. Pls.' Opp'n at 24-25. Checkley holds "that a defendant's publication of a defamatory or otherwise significantly stigmatizing statement, knowing the statement to be false, unfounded, or unsubstantiated, is conduct that, if found to be true by a factfinder, constitutes an extraordinary transgression of what is socially tolerable." Id. at 86. Checkley, however, provides no support to the plaintiffs, because as this Court has already concluded the advertisement is not even defamatory, nor does it place the plaintiffs in a false light. This being the case, the Court is simply left with the fact that the plaintiffs' photograph, which was taken by

a newspaper photographer in a public place, was used in an advertisement designed to expose the

AARP's alleged views on the military and same-sex relationships.  This does not come close to

demonstrating outrageous conduct, which is necessary to establish a claim for intentional

inflection of emotional distress.  Compare Watte v. Edgar Maeyens, Jr., M.D., P.C., 828 P.2d

479 (Or. Ct. App. 1992) (concluding that the plaintiff did not establish extreme and outrageous

conduct when employer directed two employees to hold hands, demanded that they surrender

their keys, paced tensely in front of them with clenched hands, accused them of being liars and

saboteurs, terminated their employment, refused to explain his conduct, and ordered them off the

premises), with Kraemer v. Harding, 976 P.2d 1160, 1173-74 (Or. Ct. App. 1999) (outrageous

conduct established by evidence that the "defendants accused the plaintiff [, a school employee,]

of being a child sex abuser without believing or having reasonable grounds to believe that

accusation to be true" and where the jury could infer that the "defendants knew that the making

of those statements was substantially certain to cause emotional distress").  Accordingly, the

plaintiffs' intentional infliction of emotional distress claim must be dismissed.

## IV.   Conclusion

While the defendants' unauthorized use of the plaintiffs' photograph cannot be

considered the pinnacle of decency and good taste, this Court cannot conclude that it violated

Oregon civil law.  The plaintiffs have therefore failed to state a claim upon which relief can be

granted for any of the four claims alleged in their complaint.  Accordingly, this case must be

dismissed.[10]

---

[10]  Defendant Montiti also contend that there is no legal basis for the plaintiffs' request for punitive
damages, Montini Mem. at 39, and he seeks to strike portions of the complaint that he contends are "immaterial,

(continued...)

**SO ORDERED** this 20th day of January, 2006.[11]

REGGIE B. WALTON
United States District Judge

---

[10](...continued)
impertinent or scandalous." Id. at 39-44.  Because all of the plaintiffs' claims are being dismissed, the Court need not address these arguments.

[11]   An order consistent with this ruling accompanies this Memorandum Opinion.